MAYA GOLDEN-KRASNER (SBN 217557)
Email: maya@cbecal.org
SHANA LAZEROW (SBN 195491)
Email: SLazerow@cbecal.org
COMMUNITIES FOR A BETTER ENVIRONMENT
6325 Pacific Blvd., Suite 300
Huntington Park, California 90255
Tel: (323) 826-9771
Fax: (323) 588-7079

Attorneys for Plaintiff
COMMUNITIES FOR A BETTER ENVIRONMENT

HARVEY GINNS (SBN 42245)
333 West Broadway, Suite 216
Long Beach, California 90802
Telephone: (562) 436-6219
Facsimile: (562) 435-7245

Attorney for Defendants
MIKE'S INDUSTRIES, INC., aka MIKE'S FOREIGN AUTO PARTS; JOHN KIM, aka JUNG S. KIM, aka KIM JONG; and KIM KYOUNG

**MADE JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITIES FOR A BETTER ENVIRONMENT, a California non-profit corporation,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MIKE'S INDUSTRIES, INC., aka MIKE'S FOREIGN AUTO PARTS, a corporation; JOHN KIM, aka JUNG S. KIM, aka KIM JONG, an individual; and KIM KYOUNG, an individual,<br><br>　　　　　　Defendant. | Case No. CV11- 287 GW (JCGx)<br><br>**CONSENT DECREE**<br><br>Judge: Hon. George H. Wu<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq.) |

WHEREAS, Communities for a Better Environment ("CBE") is a non-profit public benefit corporation that works to protect and enhance the environment and public health primarily in California's urban areas including San Francisco Bay;

WHEREAS, Mike's Industries, Inc., aka Mike's Foreign Auto Parts ("Mike's") is a corporation organized under the laws of the State of California operating as an auto dismantler (SIC Code 5015) in Wilmington California (hereinafter "Facility"), with the office address as 921 E. Anaheim St., Wilmington, California 90744;

WHEREAS, Defendants John Kim, aka Jung S. Kim, aka Kim Jong, and Kim Kyoung are the owners or operators of Mike's (also, collectively hereinafter, "Mike's);

WHEREAS, storm water discharges associated with industrial activity are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 91-13-DWQ (as amended by Water Quality Order 92-12 DWQ and 97-03-DWQ), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §1342 (hereinafter "General Permit");

WHEREAS, on October 14, 2010, CBE served Mike's, the United States Environmental Protection Agency, the California State Water Resources Control Board ("State Board"), the Los Angeles Regional Water Quality Control Board ("Regional Board"), the United States Attorney General and other individuals and entities with a notice of intent to file suit ("60-Day Notice") under Federal Water Pollution Control Act ("Clean Water Act" or "the Act") sections 505(a)(1) and (f), 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Act and the General Permit at the Facility;

WHEREAS, CBE filed a complaint ("Complaint") against Mike's in the United States District Court, Central District Court of California on January 10, 2011;

WHEREAS, CBE contends in its 60-Day Notice and Complaint that Mike's has repeatedly discharged polluted storm water in violation of the Clean Water Act and discharged pollutants without NPDES permit authorization;

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the statutory review period pursuant to 33 U.S.C. §1365(c);

WHEREAS, all actions taken by Mike's pursuant to this Consent Decree shall comply with all applicable federal, state, and local rules and regulations; and

WHEREAS, the Parties agree that it is in their mutual interest to resolve this matter without further litigation;

IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

**I.    COMMITMENT OF DEFENDANT**

1. To reduce or prevent pollutants associated with industrial activity in storm water and authorized non-storm water and to eliminate alleged unauthorized non-storm water discharges from the Facility into the waters of the United States, Mike's shall implement appropriate structural and non-structural Best Management Practices ("BMPs") as required by the General Permit and as described more fully below.

2. Update SWPPP: By November 1, 2011, Mike's shall revise and update its Storm Water Pollution Prevention Plan ("SWPPP") for the Facility to show all BMPs—both existing and proposed, and as described below—and specifically bring the SWPPP into compliance with the requirements of the General Industrial Permit. Mike's shall send a copy of the amended SWPPP to CBE within fourteen (14) days thereafter. CBE shall have thirty (30) days from receipt of the amended SWPPP to propose any changes to that SWPPP. Within thirty (30) days of notification by CBE of any additional changes to a Facility's SWPPP and of the reasons for such changes, Mike's shall make all such changes to the amended Facility SWPPP or shall explain in writing to CBE why Mike's is declining to do so. If the parties are unable to agree on all material provisions of the SWPPP, either party may seek resolution through the Resolution process set forth in Paragraph 16.

3. Facility Site Map: By November 1, 2011, Mike's shall identify and define on the Site Map set forth in the SWPPP: the surface flow path of storm water throughout the facility, topographical variations and slope, all unpaved areas, the individual drainage sub-areas, all

discharge points, and the facility network of storm water sewers. Mike's shall send a copy of the amended Site Map to CBE within fourteen (14) days thereafter. CBE shall have thirty (30) days from receipt of the amended Site Map to propose any changes to that Site Map. Within thirty (30) days of notification by CBE of any additional changes to a Facility's Site Map and of the reasons for such changes, Mike's shall make all such changes to the amended Facility Site Map or shall explain in writing to CBE why Mike's is declining to do so. If the parties are unable to agree on all material provisions of the Site Map, either party may seek resolution through the Resolution process set forth in Paragraph 16.

## II. POLLUTION CONTROL MEASURES

4. Best Management Practices: In accordance with this Consent Decree, to seek to meet the levels specified in Exhibit 1, by November 1, 2011, Mike's shall implement the following BMPs:

a. Mike's shall install berms around the entire perimeter of the Facility, including unused or "closed" vehicle entry ("gate") areas, but excluding operating gate areas.

b. Mike's shall direct all storm water to a minimum number of discharge points, clearly indicated on the updated Site Map.

c. At the southwest operating gate, Mike's shall either: regrade or install a low, wide berm or similar structural control to reverse the slope to direct water toward the puddling area, and pump water from the puddling area to porous concrete (the slope must be able to prevent water from discharging from the facility during a fifty-year storm event); or, install porous concrete, out of the path of the gate and install a low, wide berm to direct the water to the porous concrete.

d. Mike's shall install a low, wide berm or similar structural control at all other operating gate areas where there is no reverse slope to direct stormwater inward, either directly toward porous concrete or to the puddling area where it will be pumped to porous concrete in the northeast area of the Facility; or with regard to the east gate, water may drain into the grate upon proof there are no unsealed drainage pipes or conduits, per paragraph 4.j. below. The

structural control and slopes must be able to prevent water from discharging from the facility during a fifty-year storm event.

e.      Mike's shall maintain the integrity of all porous concrete.  During the rainy season, Mike's shall observe every storm event, and keep written and photographic documentation of these observations.  If the porous concrete fails or clogs, Mike's shall repair or replace the porous concrete.  The porous concrete must be able to withstand a fifty-year storm event.

f.      Mike's shall install plastic panels or non-metallic roofing on top of or in place of all existing galvanized roofing panels.

g.      Mike's shall, weather permitting, thoroughly sweep the Facility daily and also as needed.

h.      Mike's shall make every reasonable effort to obtain a permit for, and install, gutters on the main building and storage building to prevent water from coming onto the premises.

i.      Mike's shall install pumps to pump water from the puddling areas near the front of the Facility to the existing porous concrete in the northeast corner of the Facility.

j.      Mike's shall conduct a shallow (4-foot) excavation underneath the grate in the southeast quadrant of the Facility to ensure there are no drainage pipes or conduits, and document the excavation with photographs.  Mike's shall seal any drainage pipes found during the excavation.

k.      Mike's shall keep a Site Sweeping and Cleaning Log documenting the sweeping and any other site cleaning activity performed at the Facility.  Mike's shall make the sweeping and cleaning Log available for inspection at any site inspection or otherwise with two (2) business days advance request by CBE.  The Log will include the following information: Name, Date, Area Swept, Method.

**III.    SAMPLING, MONITORING, INSPECTION & REPORTING**

5.      Mike's shall update the Facility SWPPP to fully describe the protocol for taking storm water samples.  The description shall be precise with respect to exactly where and when the samples are to be collected.

6.     Sampling Program:  Mike's shall collect samples from each Designated Discharge Point at the Facility according to the following sampling schedule:

a.     During the Wet Season for 2011-2012 ("First Year"), Mike's shall sample and analyze three (3) storm events that result in discharge from the Facility (and occur after 72 hours of dry weather) from each Designated Discharge Point at the Facility.  Mike's shall test the samples for: Fe, Pb, Al, Cu, Zn, Cd, Ni, Mn, TSS, pH, oil & grease, and EC.  Analyses will measure both dissolved and total metals.  If any constituent is found to be below water quality criteria listed in Exhibit 1 in any three (3) consecutive sampling events, no further testing for that constituent is required, provided it is not required by the General Permit, including Table D.

b.     During the Wet Seasons for 2012-2013 ("Second Year") and 2013-2014 ("Third Year"), Mike's shall sample and analyze three (3) storm events that result in discharge from the Facility (and occur after 72 hours of dry weather) from each Designated Discharge Point at the Facility. Mike's shall test the samples for all constituents listed in Paragraph 6.a., unless that constituent has been eliminated or is required by the General Permit.  Analyses will measure both dissolved and total metals.  If any constituent is found to be below water quality criteria listed in Exhibit 1 in any three (3) consecutive sampling events, no further testing for that constituent is required, provided it is not required by the General Permit, including Table D.

7.     During the Term of this Consent Decree, except as otherwise provided in Paragraph 6, Mike's shall collect all storm water samples in compliance with the General Permit.

8.     Mike's shall provide complete results from Mike's' sampling and analysis to CBE by July 31st of each year during the term of the Consent Decree, and shall provide a chart in digital or hardcopy form that summarizes the results of all the samples and includes the levels listed in Exhibit 1 for comparison in consistent units of measurement.

9.     Iterative Approach to Water Quality Protection:

a.     Action Plan; Additional Management/Treatment of Storm Water:  For any Wet Season during the Term of this Consent Decree, if any particular parameter over the course of the Wet Season at the Facility exceed the EPA Benchmark levels as listed in Exhibit 1 for that parameter, by July 31 following each Wet Season during the term of this Consent Decree,

[PROPOSED] CONSENT DECREE – Case No. CV11- 287 GW (JCGx)         5

Mike's shall prepare and submit to CBE an action plan intended to meet these levels. The Action Plan will state (a) which constituent exceeded which levels and (b) the additional BMPs Mike's intends to undertake to address the exceedance. CBE shall have thirty (30) days from receipt to propose revisions to the Action Plan and explain in writing the basis for any such revision. Within forty-five (45) days of receiving CBE's revised Action Plan, Mike's shall either accept each such revision to the Action Plan or explain in writing why it is rejecting any such revision.

10. Within thirty (30) days after the parties reach agreement or Dispute Resolution proceedings as described in Paragraph 16 conclude on the Action Plan, Mike's shall amend its SWPPP to include all BMPs in the Action Plan not otherwise implemented and included in the SWPPP. Within thirty (30) days thereafter pursuant to this paragraph, Mike's shall provide CBE with a copy of such revised SWPPP.

11. Site Access: Mike's shall provide CBE access to the Facility for an annual inspection, including SWPPP and Hazardous Materials Business Plan. During the annual inspection, CBE may also have access to portions of the Facility from which storm water discharges to inspect compliance with the Consent Decree during operating hours with twenty-four (24) hours advance notice, except that Mike's shall have the right to deny access if circumstances would make the inspection unduly burdensome and pose significant interference with business operations. In such case, Mike's shall specify at least three (3) days within the next four (4) weeks upon which CBE's inspection may proceed, with twenty-four (24) hours notice, during normal business hours. Mike's shall not use the period of the CBE's advance notice pursuant to this paragraph to make any alterations to Facility conditions that Mike's would not otherwise have made but for receiving advance notice of the CBE's requested site access such that CBE will be allowed to inspect and sample normally representative Facility conditions and storm water discharge. Mike's shall provide monies to pay for one (1) person to perform this Site visit after all BMPs have been installed and the SWPPP updated, and again if the Mike's is in breach of this Consent Decree.

[PROPOSED] CONSENT DECREE – Case No. CV11- 287 GW (JCGx)

6

1   12.     Reports:  During the Term of this Consent Decree, Mike's shall provide CBE with a
2   copy of all documents pertaining to the General Permit submitted to the Regional Board or the
3   State Board concerning the Facility, including all documents and reports submitted to the
4   Regional Board as required by the General Permit.  Such documents and reports shall be
5   transmitted to the CBE via U.S. Mail or electronic mail at the time the documents are due to be
6   submitted to the Regional or State Board.

7   **V.      MITIGATION, FEES, AND COSTS**

8   13.     Environmental Mitigation Funding:  As mitigation of the violations alleged in the
9   CBE's Notice and Complaint, Mike's shall pay the sum of twenty-five thousand dollars
10  ($25,000) to the Rose Foundation for the Environment for the restoration and/or improvement
11  of the watershed in the area affected by Mike's' discharges.  Payment shall be made to the Rose
12  Foundation for the Environment, 6008 College Avenue, Suite 10, Oakland, California 94618,
13  within thirty (30) days of the Effective Date.  It is agreed that these monies will not be used for
14  direct advocacy or litigation against Mike's or its operations.

15  14.     Reimbursement of Fees and Costs:  Mike's shall reimburse CBE in the amount of
16  twenty-five thousand dollars ($25,000) to help defray the CBE's reasonable investigation,
17  expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of
18  investigating the activities at the Facility related to this Consent Decree, bringing these matters
19  to Mike's' attention, and negotiating a resolution of this action in the public interest.  These fees
20  include the cost of an expert from CBE to perform annual review.  Mike's shall tender payment
21  to the CBE Legal Department within thirty (30) days of the Effective Date.

22  15.     Stipulated payment: Mike's shall make a remediation payment of one thousand dollars
23  ($1,000) for each missed deadline in this Consent Decree, and for every constituent that
24  exceeds EPA Benchmark levels after November 1, 2011.  Payments shall be made for the
25  restoration and/or improvement of the watershed in the area affected by Mike's' discharges and
26  shall be awarded to the Rose Foundation for the Environment, 6008 College Avenue, Suite 10,
27  Oakland, California 94618, within thirty (30) days of the missed deadline or report of the EPA
28  Benchmark exceedance.

16. Dispute Resolution: If a dispute under this Consent Decree arises, or any Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within seven (7) days of receiving written notification from the other Party of a request for a meeting to determine whether a violation has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the violation. If the Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least seven (7) days have passed after the meet and confer occurred or should have occurred, any Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States District Court for the Central District of California, which shall retain jurisdiction over the claims asserted in this action by CBE against Mike's for the limited purpose of enforcement of the terms of this Consent Decree. The parties shall be entitled to seek fees and costs incurred in any such action, and such fees and costs shall be awarded pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. §1365(d), and applicable case law interpreting such provision.

**VI.   JURISDICTION**

17. For the purposes of this Consent Decree, the Parties stipulate that the United States District Court for the Central District of California has jurisdiction over the Parties and subject matter of this action. The Parties stipulate that venue is appropriate in the Central District of California. The Parties further stipulate for purposes of this Consent Decree that the Complaint states a claim upon which relief may be granted against Mike's pursuant to Section 505 of the Act, 33 U.S.C. §1365, and that CBE has standing to bring this action.

18. The Court shall retain and have jurisdiction over the Parties to resolve disputes arising under this Consent Decree and to enforce all terms and conditions of this Consent Decree until their termination three (3) years from the Effective Date.

**VII.   WAIVER AND RELEASES**

19. CBE Waiver and Release of Noticed Parties: Upon the Effective Date, CBE, on its own behalf and on behalf of its officers, directors, employees, and members, and each of their successors and assigns covenants not to sue Mike's, or their officers, directors, employees,

members, parents, subsidiaries, affiliates and each of their successors and assigns and their agents and other representatives during the Term of this Consent Decree with respect to any discharges of storm water from the Facility in alleged violation of the General Permit that arose before or may arise during the Term of this Consent Decree. In addition, Mike's' performance of all requirements of this Consent Decree shall constitute satisfaction in full of all of CBE's claims set forth in its Complaint in this matter alleging Clean Water Act violations associated with the discharge of storm water from the Facility. CBE shall not request any further relief against Mike's beyond that set forth in this Consent Decree for any of their claims during the Term of this Consent Decree. All claims in CBE's Complaint against Mike's shall be deemed dismissed with prejudice at the end of the Term of this Consent Decree.

20. Mike's Waiver and Release of CBE: Mike's, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates and each of their successors and assigns and their agents and other representatives, releases CBE and their officers, directors, employees, and members, and each of their successors and assigns and their agents, attorneys and other representatives from, and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to this action.

21. No Admission: The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Nothing in this Consent Decree shall be construed as, and Mike's expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by Mike's of any fact, finding, conclusion, issue of law, or violation of law. However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

## VIII.   MISCELLANEOUS PROVISIONS

22. Effective Date: The Effective Date of this Consent Decree shall be the date upon which all Parties have signed this Agreement.

23. Definition of Water: Wheresoever the word "water" is used in the Consent Decree, it shall mean "storm water" or "storm water runoff."

24. Term of Consent Decree: The Consent Decree shall continue in effect for a period of three (3) years from the Effective Date, and it shall automatically terminate on that date.

25. Execution in Counterparts: The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

26. Severability: In the event that any of the provisions of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

27. Construction: The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to their plain and ordinary meaning.

28. Authority to Sign: The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

29. Integrated Consent Decree: All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

30. Mailing of Documents to CBE: Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to CBE pursuant to this Consent Decree shall be hand delivered or sent by U.S. Mail, postage prepaid, and addressed as follows or, alternatively, may be provided by electronic mail transmission to the e-mail address listed below:

Maya Golden-Krasner
Communities for a Better Environment
6325 Pacific Blvd., Suite 300
Huntington Park, CA 90255
Tel: (323) 826-9771 Ext. 121
Fax: (323) 588-7079
E-mail:  maya@cbecal.org

Unless requested otherwise by Mike's, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Mike's pursuant to this

Consent Decree shall be hand delivered or sent by U.S. Mail, postage prepaid, and addressed as follows or, alternatively, may be provided by electronic mail transmission to the e-mail addresses listed below:

Mike's Industries, Inc.
921 E. Anaheim Street. Suite 933
Wilmington, California 90744
Direct Line: (310) 549-5282

With copies sent to:

Harvey Ginns
333 West Broadway, Suite 216
Long Beach, CA  90802
Direct line: (562) 436-6291
Fax: (562) 435-7245

31.  Facsimile Signatures:  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

32.  Impossibility of Performance:  No Party shall be considered to be in default in the performance of any of their obligations under this Consent Decree when performance becomes impossible, despite the timely good faith efforts of the Party, due to circumstances beyond the Party's control, including without limitation any act of God, war, fire, earthquake, flood, and restraint by court order or public authority.  "Circumstances beyond the Party's control" shall not include normal inclement weather (defined as anything less than or equal to a 50-year/24 hour storm event), economic hardship or inability to pay.  Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

33.  If for any reason the Department of Justice or the Court should request changes to this Consent Decree, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Department of Justice or the Court.

34.  The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for their approval and entry as a final judgment.

**COMMUNITIES FOR A BETTER ENVIRONMENT**

_____   Date: _____, 2011
by: William Gallegos

Approved as to form:

_____
Maya Golden-Krasner[1]

**MIKE'S INDUSTRIES, INC.**

_____   Date: _____, 2011
by: John Kim

Approved as to form:

_____
Harvey Ginns

**APPROVED AND SO ORDERED, this 1st day of August, 2011.**

UNITED STATES DISTRICT DISTRICT JUDGE

by: _____
Honorable George H. Wu

---

[1] As the filing attorney, I, Maya Golden-Krasner, attest that all counsel find the content of this document acceptable and have given me permission to file electronically Proposed Consent Decree on their behalf.

# EXHIBIT 1

| Constituent | Tier One (Water Quality Standards) | Tier Two (EPA Benchmark Limits) |
|---|---|---|
| **Aluminum** | 0.087 mg/l | 0.750 mg/l |
| **Cadmium** | 0.0093 mg/l | 0.0159 mg/l |
| **Copper** | 0.0031 mg/l | 0.0636 mg/l |
| **Iron** | 1.0 mg/l | 1.0 mg/l |
| **Manganese** | 0.5 mg/1 | 1.0 mg/L |
| **Nickel** | 0.0082 mg/1 | 1.417 mg/1 |
| **Total Suspended Solids** | - | 100 mg/l |
| **Oil and Grease*** | - | 15 mg/l |
| **EC*** | - | 200 umhos/cm |
| **pH** | 6.5 to 8.5 | 6.0 to 9.0 |

* Although Tier One levels are not indicated for these constituents, Mike's agrees to analyze stormwater samples for each of these constituents throughout the life of the Consent Decree.